IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LOUIS ALFONSE OLONA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>NDCS, WARDEN MAHR, SCOTT FRAKES, and AARON BLIVEN,<br><br>　　　　　　　Defendants. | 8:20CV171<br><br>MEMORANDUM<br>AND ORDER |

　　　Plaintiff is currently incarcerated at the Omaha Correctional Center. The court has granted Plaintiff permission to proceed in forma pauperis (Filing 8), and the court now conducts an initial review of the Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

　　　Plaintiff sues the Nebraska Department of Correctional Services ("NDCS"); Scott Frakes, Director of the NDCS, in his official capacity; Warden Mahr, Warden of the Community Corrections Center-Omaha ("CCC-O"), in his official capacity; and Aaron Bliven, CS Manager of CCC-O, in his official capacity for denying Plaintiff's liberty interest in remaining on CCC-O work release and for defaming him. Plaintiff claims he was removed from CCC-O work release and returned to the Omaha Correctional Center ("OCC") for being in an unauthorized area, which was a "false narrative" because he "was removed for other reasons." (Filing 1 at CM/ECF p. 9.) Plaintiff claims he was "grilled & [q]uestioned" by two OCC captains about the "Carmichael Death at CCC-O work release [j]ust days prior," in exchange for his return to work release. Plaintiff claims he cooperated with the captains, but he was not returned to work release as promised. (*Id*. at CM/ECF p. 10.) Although unclear, Plaintiff also seems to allege that the charge against him was dismissed, but

he was not returned to work-release. Plaintiff requests $25,000 in lost wages. (*Id*. at CM/ECF p. 7.)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Improper Defendants

Plaintiff first sues the Nebraska Department of Correctional Services ("NDCS"). States or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989), and suits for money damages against the state or its agencies are barred by the Eleventh Amendment. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars suit against state agency for any kind of relief); *Nix v. Norman*, 879 F.2d 429, 431-32 (8th Cir. 1989) (suit brought solely against state or state agency is proscribed by Eleventh Amendment).

Moreover, the Eleventh Amendment bars claims for damages by private parties against state employees sued in their official capacities, such as Defendants Frakes, Mahr, and Bliven. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995); *Novascone v. Nebraska Dep't of Corr. Servs.*, No. 8:19CV201, 2019 WL 6307565, at *2 (D. Neb. Nov. 25, 2019) (section 1983 suit for money damages against Scott Frakes in official capacity as Director of NDCS dismissed under Eleventh Amendment); *Reising v. Lewien*, No. 8:18CV352, 2019 WL 1585142, at *3 (D. Neb. Apr. 12, 2019) (1983 suit for money damages against unit administrator of Omaha Community Corrections Center and warden of Omaha Correctional Center in official capacities barred by Eleventh Amendment).

Therefore, Plaintiff's claims for money damages against Defendants NDCS and Frakes, Mahr, and Bliven in their official capacities must be dismissed as barred by the Eleventh Amendment.

**B. Possible Individual-Capacity Claims**

The Eleventh Amendment would not bar damages claims against Defendants Frakes, Mahr, and Bliven if Plaintiff amended his Complaint to assert claims against these Defendants in their *individual* capacities. If Plaintiff so chooses to amend his Complaint, Plaintiff should be aware of the following law. Plaintiff seems to be claiming that he had a constitutionally protected liberty interest in maintaining his community-custody work-release status, and the revocation of this status violated his Fourteenth Amendment right to procedural due process.

"The Supreme Court mandates a two-step analysis for procedural due-process claims: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quoting *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)). A plaintiff is entitled to due process only when a protected property or liberty interest is at stake. *See Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999).

**1. Protected Liberty Interest**

A liberty interest arises under the Due Process Clause itself when the consequences of the state's actions are "stigmatizing" and "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime." *Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)). In *Edwards v. Lockhart*, 908 F.2d 299, 301 (8th Cir. 1990), the Eighth Circuit Court of Appeals stated that a liberty interest inherent in the Due Process Clause arises when a person has substantial, albeit conditional, freedom such

4

as when he is on probation or parole. In *Edwards*, the court held that an inmate enrolled in an Arkansas work-release program had a protected liberty interest that arose from the Due Process Clause itself because the participant no longer lived in an institution, but lived in the community. *Id.* at 302-03. As the Eighth Circuit later acknowledged: "'*Edwards* . . . correctly identifies the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration.'" *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996) (quoting *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995)). Indeed, other courts have similarly held that the revocation of things like parole, probation, and conditional-release programs are protected by the Due Process Clause. *See, e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (revocation of probation status); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (revocation of parole); *see also Harper*, 64 F.3d at 566-67 ("[A] prisoner release program which permits a convict to exist, albeit conditionally, in society on a full-time basis more closely resembles parole or probation than even the more permissive forms of institutional confinement."); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (finding inherent liberty interest in continued placement in supervised-release program that allowed convict to live in society).

As opposed to a liberty interest arising from the Due Process Clause itself, a state-created liberty interest arises when a statute or regulation imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487.

Here, Plaintiff alleges that prior to being found guilty of "M.R. BSM3 Out of Area," he was housed at CCC-O and had full-time employment at James Skinner Bakery. (Filing No. 1 at CM/ECF p. 5.) After being found guilty of misconduct, Plaintiff says he was removed from work-release and moved back to the OCC.

5

Although unclear, Plaintiff also seems to allege that this charge was dismissed, but he was not returned to work-release.

Plaintiff appears to claim a liberty interest in his community-custody work-release status. Plaintiff's allegations suggest that he had some freedom while on community-custody work-release status, as he alleges he was housed at CCC-O and worked outside the center, but was moved to the OCC after he was found guilty of misconduct. However, it is not apparent from the Complaint whether the conditions at CCC-O were more analogous to probation or parole than to institutional life. *See Callender*, 88 F.3d at 668 (holding prisoner's work-release program did not provide the sort of substantial freedom necessary to give rise to a protected liberty interest inherent in the Due Process Clause as would entitle him to due process of law before program was terminated). Nor can the court discern from Plaintiff's allegations whether the loss of his community-custody work-release status imposed an "atypical or significant hardship" that would give rise to a state-created liberty interest. As such, Plaintiff has failed to set forth sufficient facts to allege that he had a protected liberty interest under the Due Process Clause in maintaining his community-custody work-release status. The court will give Plaintiff an opportunity to amend his Complaint to allege a protected liberty interest.

### 2. Sufficiency of Process Provided

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural requirements that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to disciplinary segregation, or is otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-72. These safeguards are (1) written notice of the charges at least 24 hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. *Id.* at 563-66.

As written, Plaintiff's Complaint fails to allege facts indicating what procedural requirements were either provided or omitted and therefore fails to state a procedural due process claim. The court shall grant Plaintiff leave to amend his Complaint to make such allegations, providing such allegations are truthful and factually supported.

### C. State-Law Defamation Claim

Plaintiff also appears to assert a state-law defamation claim. Pending amendment of the Complaint as set forth in this Memorandum and Order, the court makes no finding regarding its jurisdiction over any potential state-law claim. In the event that Plaintiff fails to amend his Complaint in accordance with this Memorandum and Order, the court will not retain jurisdiction over any state-law claim, and such claim will be dismissed without prejudice to reassertion in state court.

### IV. CONCLUSION

Plaintiff's claims for damages against the NDCS and Frakes, Mahr, and Bliven in their official capacities are dismissed as barred by the Eleventh Amendment. As presently alleged, Plaintiff's Complaint fails to state a procedural due process claim against Defendants Frakes, Mahr, and Bliven in their individual capacities. Plaintiff shall have 30 days to file an amended complaint that states a plausible procedural due process claim against such Defendants in their individual capacities.

IT IS THEREFORE ORDERED that:

1. Plaintiff's claims against Defendants NDCS and Frakes, Mahr, and Bliven in their official capacities are dismissed as barred by the Eleventh Amendment.

2.  Plaintiff shall have until **November 27, 2020**, to file an amended complaint that states a procedural due process claim upon which relief can be granted against Defendants Frakes, Mahr, and Bliven in their individual capacities. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

3.  Plaintiff's amended complaint shall restate the allegations of the current Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into **one document** may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.

4.  The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) and 1915A in the event he files an amended complaint.

5.  The Clerk of Court is directed to set a pro se case management deadline using the following text: **November 27, 2020**: amended complaint due.

DATED this 28th day of October, 2020.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge